ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| IXAIRA DEL C. CANCEL PÉREZ Y OTROS<br><br>Recurrida<br><br>v.<br><br>MUNICIPIO DE LAJAS Y OTROS<br><br>Peticionaria | **TA2025CE00285** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Mayagüez<br><br>Civil Núm.: LJ2019CV00128<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 2 de octubre de 2025.

Comparece ante este foro la Autoridad de Energía Eléctrica (AEE o "parte peticionaria") y nos solicitan que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, notificada el 10 de junio de 2025. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* a la *Moción de Sentencia Sumaria por Insuficiencia de la Prueba* presentada por la AEE.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** la expedición del auto de *certiorari*.

## I.

El 29 de octubre de 2019, Ixaira del C. Cancel Pérez en representación de su hijo Jan L. Maysonet Cancel ("los recurridos"), presentaron una *Demanda* sobre daños y perjuicios en contra del Municipio de Lajas y su aseguradora Mapfre.[1] El 30 de junio de 2020, presentaron

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

una *Demanda Enmendada*, para incluir como parte codemandada a la AEE y su compañía de seguros.[2] Posteriormente, el 1 de mayo de 2023, solicitaron enmendar la demanda, para incluir a Claro, Liberty, compañías de Cable TV y de Telecomunicaciones, como partes codemandadas.[3] En esencia, alegaron que el 1 de marzo de 2019, el menor Maysonet como consecuencia de un pedazo de metal tipo varilla o tornillo incrustado en la acera de la Calle Santa Rosa frente a la Escuela Superior de Lajas, cayó al suelo sufriendo daños físicos. Debido al incidente, el menor Maysonet sufrió una fractura del acetábulo, dislocación de cadera, y daños que requirieron operaciones. Por consiguiente, solicitaron una indemnización debido a su incapacidad para generar ingresos futuros, gastos médicos pasados y futuros, daños físicos una cantidad no menor de $200,000.00. Además, por angustias mentales una cantidad no menor de $50,000.00.

El 30 de enero de 2020, Mapfre y el Municipio de Lajas presentaron su *Contestación de la Demanda*.[4] El 10 de febrero de 2021, presentaron su *Contestación de la Demanda Enmendada*.[5] En esta, aceptaron que la acera del lugar estaba bajo el cuidado, control y mantenimiento del Municipio. Además, reconocieron que cerca de un poste de madera, del cual presumieron era de la AEE, había un pedazo de varilla de acero el cual sobresalía verticalmente sobre la superficie de la acera.

Luego de varias incidencias procesales, el 26 de mayo de 2021, la AEE presentó su *Contestación a la*

---

[2] *Demanda Enmendada*, entrada núm. 16 en SUMAC.
[3] *Demanda Enmendada*, entrada núm. 83 en SUMAC.
[4] *Contestación de la Demanda*, entrada núm. 12 en SUMAC.
[5] *Contestación de la Demanda Enmendada*, entrada núm. 24 en SUMAC.

*Demanda Enmendada*.[6] El 15 de agosto de 2023, presentaron una *Contestación a la Demanda Enmendada*.[7] Mediante esta, aceptó que en la acera había un poste en el cual quedaron "trazos de que en el lugar hubo en algún momento un pedazo de lo que parece ser un pedazo de metal incrustado en la acera." Asimismo, señaló que el joven Maysonet había sido el responsable de sus daños al ser negligente cuando se desplazó por el área sin la debida precaución y vigilancia, siendo dicha omisión la causa próxima de los daños sufridos. Entre las defensas afirmativas, planteó que los daños reclamados no fueron a causa de alguna acción u omisión negligente o culpable de la AEE. A su vez, que el pedazo de metal tipo varilla o tornillo incrustado en la acera no pudieron haberlo instalado ellos.

El 17 de agosto de 2023, Puerto Rico Telephone Company h/n/c Claro (PRTC) presentó su *Contestación a Demanda Enmendada*.[8] En síntesis, negó que hubiese instalado el cable de tierra ("*ground*") en el poste de la AEE con conexión al suelo con una varilla expuesta en la acera y despegada del poste. Sostuvo que, conforme a la evidencia, las facilidades de Claro en el poste estaban atadas a un brazo o puente que hacía innecesario el cable de tierra.

Posteriormente, el 29 de agosto de 2024, Liberty Puerto Rico presentó su *Contestación a Demanda Enmendada*.[9]

El 25 de febrero de 2025, la parte recurrida presentó una *Moción Solicitando el Desistimiento sin*

---

[6] *Contestación a la Demanda Enmendada*, entrada núm. 40 en SUMAC.
[7] *Contestación a la Demanda Enmendada*, entrada núm. 104 en SUMAC.
[8] *Contestación a Demanda Enmendada*, entrada núm. 105 en SUMAC.
[9] *Contestación a Demanda Enmendada*, entrada núm. 144 en SUMAC.

*Perjuicio en cuanto a Codemandado Liberty*.[10] Al día siguiente, el foro primario notificó una *Sentencia Parcial*, mediante la cual declaró Ha Lugar dicha solicitud.[11]

El 25 de marzo de 2025, la AEE presentó una *Moción de Sentencia Sumaria por Insuficiencia de la Prueba*.[12] Alegó que, la parte recurrida carecía de prueba suficiente para establecer que eran responsables por el alegado accidente. Sostuvo que, no había prueba que estableciera que la varilla constituyera un sistema de "*ground*" que formara parte de la infraestructura de la AEE, que se encontrara bajo su responsabilidad o que tuvieran conocimiento de su existencia. En su consecuencia, solicitó que fuera desestimada con perjuicio la demanda en su contra e impusiera el pago de costas, gastos y honorarios de abogados.

En respuesta, el 14 de abril de 2025, la parte recurrida presentó *su Oposicion a Solicitud de Sentencia Sumaria Parcial*.[13] En esta, indicaron que la controversia siempre giró sobre quién es la parte responsable de la varilla. Añadieron que, la AEE por ser dueña del poste, es quien otorga los permisos a CLARO o a Liberty para instalar sus equipos, que incluyen los permisos de instalación de varilla de "*ground*". Por ello, reiteraron que independientemente de quién colocó la varilla, la parte peticionaria era responsable de que esa varilla estuviese mal colocada. Así pues,

---

[10] *Moción Solicitando el Desistimiento sin Perjuicio en cuanto a Codemandado Liberty*, entrada núm. 166 en SUMAC.
[11] *Sentencia Parcial*, entrada núm. 167 en SUMAC.
[12] *Moción de Sentencia Sumaria por Insuficiencia de la Prueba*, entrada núm. 175 en SUMAC.
[13] *Oposicion a Solicitud de Sentencia Sumaria Parcial*, entrada núm. 180 en SUMAC.

sostuvieron que existían controversias de hechos materiales que impedían se dictara sentencia sumaria.

Evaluadas las mociones presentadas, el 10 de junio de 2025, el foro primario notificó la *Resolución* recurrida, mediante la cual declaró *No Ha Lugar* a la *Moción de Sentencia Sumaria por Insuficiencia de la Prueba* presentada por la AEE.[14] El Tribunal concluyó lo siguiente:

> […], como bien señala la parte demandante, la controversia sobre la titularidad y responsabilidad respecto a la varilla es un hecho esencial para la resolución del caso, el cual no puede ser resuelto mediante sentencia sumaria sin que previamente se haya celebrado una vista evidenciaría en la que se presenten los testimonios y las pruebas correspondientes. La presencia de la varilla en la acera, los testimonios contradictorios y la falta de claridad en cuanto a su vínculo con la infraestructura de la AEE, generan dudas razonables que deben ser resueltas en un juicio.

En desacuerdo, el 25 de junio de 2025, la AEE presentó una *Moción de Reconsideración y para que se emitan Determinaciones de Hechos conforme a la Regla 36.4 de Procedimiento Civil*.[15] En síntesis, reiteró que la parte recurrida no contaba con prueba suficiente en la que le permitiera establecer los elementos fundamentales de su causa de acción. Asimismo, señaló lo siguiente:

> En particular, la parte demandante carece de prueba admisible que demuestre: (1) qué es la varilla incrustada en la acera; (2) si dicha varilla parte de un sistema de puesta a tierra (*ground*); (3) si ese supuesto sistema de *ground* pertenece a la AEE; (4) cuándo y cómo se creó la alegada condición de peligrosidad; (5) si la AEE tenía conocimiento real o imputable de su existencia; y (6) que la AEE tenía un deber jurídico específico de inspeccionar, advertir o corregir dicha condición.

---

[14] *Resolución*, entrada núm. 182 en SUMAC.
[15] *Moción de Reconsideración y para que se emitan Determinaciones de Hechos conforme a la Regla 36.4 de Procedimiento Civil*, entrada núm. 183 en SUMAC.

Por ello, alegó que ausente de toda prueba admisible y específica, la parte recurrida no podía cumplir con su carga probatoria y se debió desestimar con perjuicio la demanda.

El 14 de julio de 2025, el foro primario notificó una *Resolución Reconsideración*, en la cual denegó la solicitud de Reconsideración.[16]

Aun inconforme, el 13 de agosto de 2025, la AEE presentó el recurso de epígrafe e imputaron la comisión de los siguientes errores:

> ERRÓ EL TPI AL DETERMINAR QUE EL APELADO CUENTA CON PRUEBA SUFICIENTE PARA SOSTENER SU CAUSA DE ACCIÓN POR NEGLIGENCIA CONTRA LA AEE, A PESAR DE QUE NO CUENTA CON PRUEBA PERICIAL, DOCUMENTAL NI TESTIFICAL ADMISIBLE QUE ESTABLEZCA DE FORMA CONCLUYENTE QUÉ ES LA VARILLA, SU TITULARIDAD, LA EXISTENCIA DE UNA CONDICIÓN PELIGROSA IMPUTABLE A LA AEE O EL INCUMPLIMIENTO DE UN DEBER DE CUIDADO POR PARTE DE ESTA.
>
> ERRÓ EL TPI AL NO IDENTIFICAR EXPRESAMENTE, CONFORME A LA REGLA 36.4 DE PROCEDIMIENTO CIVIL, LOS HECHOS ESENCIALES Y PERTINENTES SOBRE LOS CUALES NO EXISTÍA UNA CONTROVERSIA SUSTANCIAL, ASÍ COMO AQUELLOS VERDADERAMENTE Y DE BUENA FE CONTROVERTIDOS.

El 19 de agosto de 2025, emitimos *Resolución* concediéndole a la parte recurrida el término de quince (15) días para que presentara su alegato en oposición.

Posteriormente, debido a que la *Resolución* recurrida carecía de hechos esenciales y pertinentes incontrovertidos y controvertidos, el 22 de agosto de 2025, emitimos una *Resolución*, en la cual le ordenamos al foro primario a que fundamentara su pronunciamiento, de manera que nos permitiera ejercer responsablemente nuestra función revisora.

---

[16] *Resolución Reconsideración*, entrada núm. 184 en SUMAC.

El 3 de septiembre de 2025, la parte recurrida presentó su *Oposición a Escrito de Certiorari*.

El 4 de septiembre de 2025, según requerido, el foro *a quo* emitió una *Resolución* con las correspondientes determinaciones. En esta, formuló las siguientes determinaciones de hechos incontrovertidos:

1. El Sr. Jan Luis Maysonet Cancel (demandante) el 1 de marzo de 2019, sufrió un accidente al caer al suelo, alegadamente como consecuencia de un pedazo de alambre incrustado en la acera frente a la Escuela Superior Leonides Morales Rodríguez del Municipio de Lajas (Escuela), lo que le ocasiono daños.

2. Una vez el Municipio de Lajas advino en conocimiento del alegado incidente, se impartieron instrucciones para cortar la varilla.

3. Mediante la *Resolución* Núm. 30 se autorizó al entonces Alcalde del Municipio de Lajas a gestionar la expropiación "de la franja de terreno en la Calle Santa Rosa para hacer esta acera".

4. Antes de emitir la *Resolución* Núm. 30 no existía acera frente a la Escuela.

5. La acera ubicada frente a la Escuela fue construida por el Municipio de Lajas alrededor del año 2001, es decir, con anterioridad al incidente objeto de la demanda de epígrafe.

6. La acera construida por el Municipio de Lajas para alrededor del año 2001, que ubicada frente a la Escuela y donde ocurrió la caída del demandante, es propiedad y se encuentra bajo su cuidado, control y mantenimiento del Municipio de Lajas.

7. El poste ubicado en la acera frente a la Escuela, donde ocurrió el accidente objeto de esta demanda, es propiedad de la Autoridad de Energía Eléctrica.

8. El poste cerca del cual ocurrió el accidente objeto de esta demanda data de la década de 1980, basándose en sus características físicas, el tipo de tratamiento con pentaclorofenol y el color del poste.

9. El Sr. Yamil Olivo Pérez (Sr. Olivo Pérez) trabaja para CLARO como supervisor de planta con sede en el pueblo de Cabo Rojo.

10. El Sr. Olivo Pérez supervisa los pueblos de Lajas, Sabana Grande, Maricao y San Germán, y que tiene a su cargo una brigada de nueve

empleados que laboran en el Departamento de Reparaciones.

11. El Sr. Olivo Pérez lleva aproximadamente 14 años trabajando para CLARO. Con anterioridad de ocupar su puesto actual como supervisor, el Sr. Olivo Pérez trabajó por unos 12 años como contratista para esa misma empresa y sus predecesoras, incluyendo Puerto Rico Telephone.

12. El Sr. Olivo Pérez ha ocupado el cargo de supervisor durante aproximadamente cinco años y, laboró por cerca de 21 años en el campo o "*field*" como instalador y reparador.

13. El Sr. Olivo Pérez fue enviado por instrucciones de su gerente para inspeccionar el área relacionada al caso, con el propósito de determinar si la varilla que se encontraba en el lugar pertenecía a la empresa CLARO o formaba parte de alguna de sus instalaciones. Al llegar al lugar, observó que la varilla ya no estaba presente.

14. El testimonio bajo juramento del Sr. Olivo Pérez, su testimonio se limitará a la infraestructura de CLARO que es la que él conoce.

15. El Sr. Olivo Pérez, bajo juramentó atestiguo que, durante la inspección realizada en la zona del incidente, no identificó equipo alguno perteneciente a otras compañías. Indicó expresamente que desconoce las instalaciones de otras empresas.

16. El Sr. Olivo Pérez desconoce si otras compañías utilizan sistemas de "*ground*" con formas o características distintivas diferentes a los de CLARO.

17. El Sr. Olivo Pérez señaló que ha trabajado exclusivamente con CLARO y que no tiene conocimiento sobre cómo operan otras empresas.

18. El Ing. Luis G. Rivera Rivera (Ing. Rivera Rivera) se desempeña como supervisor del a rea de Ingeniería y Construcción de Claro en la regio n Isla Oeste.

19. El Ing. Luis G. Rivera Rivera cuenta con 28 años de experiencia laboral en Claro, siempre en el área de Ingeniería y Construcción; es ingeniero civil de profesión, y posee licencia de ingeniería desde el año 1992.

20. El Ing. Rivera Rivera declaró bajo juramento declaro que no es experto en la parte eléctrica.

21. El Ing. Rivera Rivera admitió bajo juramento que desconoce el estándar de instalación del sistema de "*ground*" de la Autoridad de Energía Eléctrica.

22. El Ing. Rivera Rivera declaró bajo juramento que no puede afirmar que la varilla observada en las Figuras 7 y 8 del informe pericial del Ing. Víctor M. Ruiz Pérez corresponde a un sistema de "*ground*" de la Autoridad de Energía Eléctrica.

23. Las Figuras 7 y 8 del informe pericial, el Ing. Rivera Rivera afirmó que la varilla observada no aparenta ser una varilla de "*ground*", sino una varilla de construcción, ya que presenta "*rajes*" o marcas regulares típicas de ese tipo de material.

24. El Ing. Ruiz Pérez es ingeniero electricista graduado del Recinto Universitario de Mayagüez y cuenta con 44 años de experiencia en la industria eléctrica de Puerto Rico, incluyendo 30 años y medio de servicio en la Autoridad de Energía Eléctrica.

25. El Ing. Ruiz Pérez ocupó múltiples cargos dentro de la Autoridad de Energía Eléctrica, incluyendo los de ingeniero en adiestramiento, ingeniero supervisor, ingeniero de distrito e ingeniero de a rea, donde estuvo a cargo de operaciones de campo, construcción, diseño, mantenimiento y operación de líneas de transmisión y distribución eléctrica.

26. El Ing. Ruiz Pérez trabajó como facilitador de la división legal de la Autoridad de Energía Eléctrica, donde ofreció seminarios sobre investigación de accidentes a abogados e investigadores de la corporación publica; elaboró informes periciales en el contexto de litigios en los que participaba la Autoridad de Energía Eléctrica.

27. El Ing. Ruiz Pérez, perito de la Autoridad de Energía Eléctrica, observó que la varilla expuesta en el lugar de la caí da no cumple con los estándares de la AEE, ya que sobresalía aproximadamente 4 pulgadas sobre la superficie de la acera, mientras que las varillas de conexión a tierra de la AEE se instalan enterradas a un mínimo de 12 pulgadas de profundidad.

28. Autoridad de Energía Eléctrica señaló que la superficie de la varilla en cuestión mostraba un patrón de relieve o marcas, lo cual no es característico de las varillas de cobre lisas utilizadas por la AEE para sistemas de "*ground*".

29. El Ing. Ruiz Pérez concluyó que la varilla observada no pertenece ni cumple con los patrones de instalación de la AEE.

30. El demandante testificó bajo juramento que nunca había visto la varilla antes del día del accidente.

31. El demandante testificó bajo juramento que tampoco vio la varilla el día del accidente,

sólo observó el lugar donde supuestamente había estado luego del evento.

A su vez, planteó las siguientes determinaciones de hechos en controversia:

1. Si el poste de madera ubicado frente a la Escuela fue instalado antes de la construcción de la acera en ese lugar, ya que el Ing. Ruiz Pérez, perito de negligencia de la AEE, concluyó que el poste fue instalado antes de la construcción de la acera, ya que no se observó ningún remanente del cable de cobre que fue vandalizado. Explicó que, de haberse construido la acera después del corte del cable, debió haber quedado visible algún segmento o "*piquito*" del mismo en el borde del pavimento.

2. Según el Ing. Ruiz Pérez, la ausencia total de cable sugiere que la vandalización del sistema de *ground* ocurrió antes de que se vaciara el cemento de la acera, y que dicha cementación ocultó por completo cualquier rastro del cable cortado.

3. El Ing. Rivera Rivera desconoce cómo se instalan sus sistemas de conexión a tierra *ground* de otras compañías, limitando sus prácticas e instrucciones de instalación de la empresa CLARO y los contratistas certificados que trabajan para ella.

4. El Ing. Rivera Rivera afirmó que el objeto visible en la imagen relacionada al lugar del accidente no parece ser una varilla de tierra o *ground*, sino una varilla de construcción.

5. El Ing. Ruiz Pérez, perito de la AEE, identificó en su inspección del poste cercano al lugar donde ocurrió el incidente objeto de la demanda de epígrafe, un cable de cobre calibre #4 sin cubierta, instalado en un poste de la AEE a una altura de aproximadamente 8 pies del nivel del suelo. Indicó que este tipo de cable corresponde a un bajante de *ground* según los estándares de la AEE (M2-1 o M2-2).

6. El hecho de que existiera una varilla expuesta en la base del poste no implica que esta perteneciera a la AEE, ya que la corporación no deja instalaciones de *ground* expuestas al ambiente conforme a sus estándares M2-1 y M2-2.

7. El demandante admitió bajo juramento que, al momento del accidente ocurrido el 1 de marzo de 2019, no supo con que se tropezó y no cuenta con prueba para establecer con que se cayó.

8. Se desconoce la naturaleza o el origen del pedazo de alambre incrustado en la acera frente a la Escuela.

9. Existe controversia si el pedazo de alambre incrustado en la acera frente al poste de la AEE es un sistema de puesta a tierra o *ground*.

10. Existe controversia si el pedazo de alambre incrustado en la acera frente a la Escuela le pertenece a la AEE.

11. Existe controversia si para establecer que la AEE conocía o debía conocer sobre la existencia del pedazo de alambre incrustado en la acera, frente a la Escuela y en las cercanías del poste ubicado en ese lugar.

12. Existe controversia si para sobre el deber jurídico alegadamente incumplido por la AEE y, en consecuencia, deberá presentar prueba para sustentar sus alegaciones sobre negligencia.

Asimismo, informó que el 11 de agosto de 2025, emitió una *Sentencia Parcial*, dado que, la parte recurrida y la PRTC habían llegado a un acuerdo transaccional parcial, desistiendo con perjuicio de la reclamación.[17] Además, que el 20 de agosto de 2025, emitió otra *Sentencia Parcial*, puesto que, la parte recurrida, el Municipio de Lajas y Mapfre perfeccionaron un *Acuerdo Transaccional Privado y Confidencial,* poniendo fin a las controversias entre ambos.[18]

El 11 de septiembre de 2025, emitimos una *Resolución*, concediéndole a las partes de epígrafe un término de 10 días para que presentaran un *Alegato Suplementario*.

Transcurrido el término concedido a las partes para que presentaran el alegato suplementario sin que lo hicieran, damos por perfeccionado el caso de epígrafe.

**II.**

**-A-**

El *certiorari* es el vehículo procesal que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847

---

[17] *Sentencia Parcial*, entrada núm. 187 en SUMAC.
[18] *Sentencia Parcial*, entrada núm. 191 en SUMAC.

(2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras,* 206 DPR 391, 404 (2021*); 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016). Mediante este recurso extraordinario se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez*, supra, pág. 847. Contrario al recurso de apelación, el Tribunal de Apelaciones posee la facultad discrecional de expedir o denegar el recurso de certiorari toda vez que, de ordinario, se tratan de asuntos interlocutorios. Íd.

La Regla 52.1 de Procedimiento Civil, *supra*, Ap. V, R. 52.1, dispone taxativamente las instancias en las que este Tribunal ostenta autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras,* supra; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.,* 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. La referida Regla dispone que el foro apelativo intermedio solamente expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o a la denegación de una moción de carácter dispositivo. Véase Regla 52.1 de Procedimiento Civil, *supra*. A su vez, a modo de excepción, este tribunal podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios,

anotaciones de rebeldía, asuntos relativos a relaciones de familia, casos de interés público o cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

El propósito de esta Regla es evitar la dilación que causaría la revisión judicial de las controversias que podrían ser planteadas en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, supra, pág. 486; 800 *Ponce de León v. AIG*, supra, pág. 175; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-594 (2011). Sin embargo, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la expedición del auto sin más." *Medina Nazario v. McNeill Healthcare LLC,* supra.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, establece los criterios que debemos considerar en el ejercicio discrecional de atender una petición de *certiorari*. A saber, este Tribunal debe considerar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

-B-

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. Regla 36.1 de Procedimiento Civil, supra, R. 36.1. Véase, además: *Cruz, López v. Casa Bella y otros,* supra; *Banco Popular v. Posada*, 214 DPR 329 (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). La controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión*, supra. En otras palabras, la controversia debe ser de calidad suficiente para que sea necesario que el juzgador la dirima mediante un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), dispone que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no

existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además: *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

No obstante, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros*, supra; *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 278 (2021). En este sentido, "[l]os tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración." *Carpets & Rugs v. Tropical Reps,* 175 DPR 615, 638 (2009). Empero, aun cuando se deben evaluar los elementos subjetivos o de intención, no se impide la utilización de la sentencia sumaria si de los documentos se desprende la inexistencia de una controversia real y sustancial sobre los hechos materiales. Regla 36.3 (e) de Procedimiento Civil, supra, R. 36.3 (e). Véase, además: *Ramos Pérez v. Univisión*, supra, pág. 219; *Birriel Colón v. Econo y otro*, supra, pág. 91. Así pues, procede dictar sentencia sumaria cuando el juzgador está claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida y es innecesario celebrar una vista en los méritos. *Birriel Colón v. Econo y otro*, supra.

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales con evidencia

sustancial. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. Regla 36.3 (c) de Procedimiento Civil, supra, R. 36.3 (c). Véase, además: *Birriel Colón v. Econo y otro*, supra; *Ramos Pérez v. Univisión*, supra, pág. 215. Sin embargo, la ausencia de prueba para refutar la evidencia presentada no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Econo y otro,* supra; SLG *Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

En *Meléndez González et al. v. M. Cuebas*, supra, nuestro Tribunal Supremo estableció la normativa que este Tribunal de Apelaciones debe observar al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria, por lo que, está llamado a realizar una revisión *de novo*, conforme con la Regla 36 de Procedimiento Civil, *supra*. En tal ejercicio, no se puede considerar evidencia que no se presentó ante el Foro *a quo*, y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas,* supra, pág. 116.

En segundo lugar, el Tribunal de Apelaciones debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36

de Procedimiento Civil, *supra*, y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo,* supra y *Meléndez González et al. v. M. Cuebas*, supra.

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *SLG Zapata- Rivera v. J.F. Montalvo,* supra y *Meléndez González et al. v. M. Cuebas*, supra. De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra*. Véase, además: *Meléndez González et al. v. M. Cuebas*, supra.

Finalmente, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, supra, pág. 119.

### III.

En el caso de autos, la AEE nos solicita que revisemos la negativa del foro primario al declarar no ha lugar su solicitud de sentencia sumaria por insuficiencia de prueba y, por consiguiente, desestimación de la causa de acción.

Conforme establece nuestro ordenamiento jurídico, la Regla 52.1 de Procedimiento Civil, *supra*, nos faculta la revisión de resoluciones dictadas por el foro primario, cuando se recurre de la denegatoria de una moción de carácter dispositivo, como la solicitud de sentencia sumaria. No obstante, es preciso recalcar que nuestra discreción no se ejerce en el vacío. La Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*,

establece los criterios para determinar si debemos ejercer nuestra facultad discrecional revisora.

Luego de evaluar el recurso de epígrafe, bajo los criterios de la Regla 40 del Reglamento de este Foro, *supra*, somos del criterio que procede denegar la expedición del auto de *certiorari* solicitado por la AEE. Es nuestro criterio que, en la *Resolución* recurrida el foro *a quo* no incurrió en abuso de discreción o actuó bajo prejuicio o parcialidad. De igual forma, no se demostró que se haya equivocado en la interpretación o aplicación de la norma procesal, por ello, no nos vemos persuadidos a pronunciarnos en esta etapa de los procedimientos.

Consecuentemente, al amparo de los criterios que guían nuestra discreción, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Así las cosas, procedemos a denegar la expedición del auto de *certiorari*.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** la expedición del auto solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones